# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### AT NASHVILLE

TRUBRIDGE, INC.          )

                             )      **Case No. 3:24-cv-01377**

**v.**                       )      **Chief Judge Campbell**

                             )      **Magistrate Judge Holmes**

**HOUSTON COUNTY *et al.***     )

## ORDER AND MEMORANDUM OPINION

Pending before the Court is the parties' joint motion for discovery dispute conference (Docket No. 84), which is **DENIED** to the extent the Court does not find it necessary to conduct a discovery conference to resolve the discovery issues raised by the parties in their joint discovery dispute statements (Docket No. 85). Those issues are decided as detailed below.

## I.      BACKGROUND

Plaintiff TruBridge, Inc. initiated this lawsuit on November 20, 2024 against three Defendants: Houston County, Shamrock Community Hospital, Inc., and Braden Health, LLC. (Docket No. 1.) Plaintiff then amended its complaint on February 18, 2025 to name an additional Defendant, Braden Health, Inc., revise its allegations, and assert additional claims. (Docket No. 40.)

In its amended complaint, Plaintiff alleges as follows: From 2013 to 2020, Plaintiff entered into several agreements with Houston County, which owned and operated a rural hospital, to provide that hospital with electronic health records services and accounts receivable management services (the "TruBridge Services Agreements"). In July 2022, Houston County entered into an Asset Purchase Agreement ("APA") with Shamrock for it to purchase certain assets of the hospital. Shamrock is a subsidiary of Braden Health, Inc., which now operate the hospital. Braden Health, LLC financed the purchase of the hospital. As part of its purchase of the hospital, Shamrock

assumed the TruBridge Services Agreements. Plaintiff continued to provide services to the hospital under the TruBridge Services Agreements, but Shamrock, Braden Health, LLC, and Braden Health, Inc. have not paid Plaintiff for those services and have prevented Plaintiff from performing other services. Accordingly, Plaintiff has asserted a claim for breach of contract against all four defendants (Houston County, Shamrock, Braden Health, LLC, and Braden Health, Inc.), and alternatively has asserted claims for unjust enrichment and quantum meruit against the three defendants involved in the purchase of the hospital (Shamrock, Braden Health, LLC, and Braden Health, Inc.).

On April 21, 2025, in response to the amended complaint, Shamrock, Braden Health, LLC, and Braden Health, Inc. jointly moved to dismiss. (Docket No. 51.) The Court denied their motion, and the three defendants filed an answer to the amended complaint on April 6, 2026. (DE 95.) In that same filing, Shamrock asserted a counterclaim against Plaintiff for unjust enrichment. (*Id.* at 18–21.)

Also on April 21, 2025, in response to the amended complaint, Houston County filed an answer. (Docket No. 56.) Houston County then amended its answer, with the Court's leave, and filed crossclaims against Shamrock. (Docket No. 94.) Shamrock, Braden Health, LLC, and Braden Health, Inc. filed a joint answer to Houston County's crossclaims. (Docket No. 95.)

The deadline for the parties to complete discovery and bring discovery disputes to the Court's attention was March 20, 2026. (Docket No. 63 at ¶ G.) The parties filed the instant motion for discovery conference on that date. (Docket No. 84.) However, after the motion was filed, the Court extended the discovery deadline to July 20, 2026 and the deadline to bring discovery disputes to June 30, 2026. (Docket No. 93 at 13–14.)

## II.       LEGAL STANDARDS

Generally, parties may obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1). Rule 26 sanctions a broad search and the information sought by a party need not be admissible to be discoverable. *Id*. Further, the provision for discovery of relevant but inadmissible information that appears "reasonably calculated to lead to the discovery of admissible evidence" was deleted in the 2015 amendments to Rule 26 because of the incorrect reliance on that phrase to resist discovery. Instead, the concept of "reasonably calculated to lead to the discovery of admissible evidence" was replaced by the direct statement that information within the scope of relevancy "need not be admissible in evidence to be discoverable."

However, the scope of discovery has "ultimate and necessary boundaries." *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351 (1978). It is also "well established that the scope of discovery is within the sound discretion of the trial court." *In re Flint Water Cases*, 960 F.3d 820, 826 (6th Cir. 2020) (quoting *Criss v. City of Kent*, 867 F.2d 259, 261 (6th Cir. 1988)). *See also Crawford-El v. Britton,* 523 U.S. 574, 598–99 (1998) (trial court is afforded broad discretion to control and dictate the sequence of discovery); *Marie v. American Red Cross*, 771 F.3d 344, 366 (6th Cir. 2014) (district courts have broad discretion to manage the discovery process and control their dockets) (internal citations omitted); *McNeil v. Cmty. Prob. Servs., LLC*, No. 1:18-cv-00033, 2019 WL 5957004, *1 (M.D. Tenn. Oct. 29, 2019) (ultimately, the scope of discovery is within the broad discretion of the trial court) (internal citations omitted).[1]

---

[1] That sentiment has continued throughout revisions to Rule 26 including the most recent ones. The Court also possesses inherent authority to manage litigation. As noted by the First Circuit, "[a]s lawyers became more adept in utilizing the liberalized rules . . . [t]he bench began to use its inherent powers to take a more active, hands on approach to the management of pending litigation." *In re San Juan DuPont Plaza Hotel Fire Litig.*, 859 F.2d 1007, 1011 (1st Cir. 1988).

3

The trial court is directed to prevent discovery that falls outside the scope of Rule 26(b)(1). Fed. R. Civ. P. 26(b)(2)(C)(i)-(iii). Discovery may be denied if: (i) it is unreasonably cumulative or duplicative or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the requesting party has already had ample opportunity to obtain it; or, (iii) it falls outside the scope of discovery set forth in Rule 26(b)(1). *Id.* Generally, the party seeking discovery is obliged to demonstrate relevance. When the information sought appears to be relevant, "the burden shifts to the party resisting discovery to show, with specificity, why the requested discovery is not proportional to the needs of the case," *Allgood v Baptist Mem'l Med. Grp., Inc.*, No. 19-2323-JTF-tmp, 2020 WL 86455, *1 (W.D. Tenn. Jan. 7, 2020) (citation omitted), or to establish that the information either is not relevant or is so marginally relevant that the presumption of broad disclosure is outweighed by the potential for undue burden or harm. *O'Malley v. NaphCare Inc.*, 311 F.R.D. 461, 463 (S.D. Ohio 2015). Otherwise, the party opposing production generally bears the burden of establishing that the discovery sought falls beyond the purview of Rule 26. *See Shropshire v. Laidlaw Transit, Inc.*, No. 06–10682, 2006 WL 6323288, *2 (E.D. Mich. Aug. 1, 2006) ("The party who resists discovery has the burden to show discovery should not be allowed and has the burden of clarifying, explaining, and supporting its objections.")

Although a party should not be denied access to information necessary to prove their contentions, neither should they be "permitted to go fishing and a trial court retains discretion to determine that a discovery request is too broad and oppressive." *In re Ohio Execution Protocol Litig.*, 845 F.3d 231, 236 (6th Cir. 2016) (citation omitted). "A court must balance the right to discovery with the need to prevent fishing expeditions." *Id.* at 236–37 (internal quotation omitted)

"The judiciary is 'free, within reason, to exercise this inherent judicial power in flexible pragmatic ways.'" *Id*. at 1011 n.2 (quoting *HMG Prop. Invs., Inc. v. Parque Indus. Rio Canas, Inc.*, 847 F. 2d 908, 916 (1st Cir. 1988)).

4

(citation omitted). Objections to broad discovery that requests information without temporal limits that are confined by the specific litigation or that requests such things as identification of all communications or persons with whom communications occurred related to a general topic will be more likely to be sustained.

A party objecting to discovery must state with particularity the grounds for objection and why the request cannot be responded to as is. Boilerplate objections, such as the discovery requests are *overly broad*, are *vague*, are *not proportional to the needs of the case*, are *unduly and substantially burdensome*, or *are not likely to lead to admissible information*, are "legally meaningless and amount to a waiver of an objection." *Waskul v. Washtenaw Cnty. Cmty. Mental Health*, 569 F.Supp.3d 626, 637 (E.D. Mich. 2021) (internal citation omitted). *See also Davis v. American Highwall Mining, LLC*, 570 F.Supp.3d 491, 495 (E.D. Ky. 2020) (collecting several authorities in support). Boilerplate objections and blanket refusals to search for relevant documents will not be deemed acceptable responses to discovery requests.

### III.    DISCOVERY AT ISSUE

The discovery disputes at issue are largely between Plaintiff and Shamrock.[2] The parties present three issues to the Court for resolution: (1) whether Shamrock must produce audit logs and patient account detail reports in response to certain interrogatories and requests for production from Plaintiff; (2) whether Shamrock must produce cash receipts for the hospital in response to

---

[2] The Court will refer solely to Shamrock when discussing arguments made jointly by Shamrock, Braden Health, LLC, and Braden Health, Inc. in the discovery dispute statement. This is done for the legibility and simplicity, and because the discovery requests in issues 1 and 2 are directed to Shamrock and not to Braden Health, LLC or Braden Health, Inc.

certain interrogatories and requests for production from Plaintiff; and (3) whether Plaintiff has produced an adequate amount of responsive documents.[3]

As an initial matter, the parties failed to provide any legal authority to support their positions, contrary to the Court's express directions in the Notice and Order of Magistrate Judge Holmes' Case Management Procedures and Instructions (Docket No. 59 at 4) and the Initial Case Management Order (Docket No. 63 at ¶ G). Nevertheless, the Court resolves the discovery dispute as follows:

**1.      Shamrock's Production of Audit Logs and Patient Account Detail Reports**

Plaintiff argues that Shamrock should produce audit logs and patient account detail reports, both of which can be accessed from and relate to the hospital's electronic health record ("EHR"). It appears that the EHR system at issue is the one that the hospital used before Shamrock acquired the hospital. Plaintiff contends that Shamrock is able to access the EHR because it is in the care, custody, and control of the hospital. Accordingly, it argues that Shamrock should be able to produce the logs – which show who accessed the EHR, when, and why – and the reports – which appear to be organized by claim and include information related to the amounts that the hospital charged patients and third party payors, payments that the hospital received, and services provided by Plaintiff to the hospital. Plaintiff states that the reports are "where [Plaintiff's] representatives document their work on a claim."

The Court assumes that Shamrock is opposed to producing these documents, though it does not explicitly state as much. Instead, Shamrock appears to argue that Plaintiff itself may be able to access the EHR system at issue and the requested documents, though it is unclear to the Court

---

[3] The parties included a fourth issue regarding the sufficiency of the topics included in the 30(b)(6) notice of deposition issued by Shamrock to Plaintiff, but it appears that they resolved this dispute. (Docket No. 85 at 11–12.)

whether Shamrock can or cannot access the EHR system at issue. Shamrock denies that its employees used this EHR system after the acquisition, and states that they used paper records instead. As for the audit logs specifically, Shamrock indicates that it may face issues producing the documents because it is not possible to distinguish between someone accessing the EHR and using the EHR and because information may be produced that is related to other facilities aside from the hospital at issue. It states that it asked Plaintiff questions to clarify some of these production issues, but it did not receive "satisfactory responses." Shamrock does not elucidate on what those responses were or why they were not "satisfactory."

The Court finds that audit logs and patient account details are relevant to the claims and defenses at issue in this litigation. Plaintiff asserts that it was contracted to provide Shamrock with services related to the EHR system, but that Shamrock failed to pay Plaintiff for those services and prevented Plaintiff from performing other services. Accordingly, audit logs and records from the EHR system that would show whether and to what extent Shamrock used the system are relevant.

The Court finds that Plaintiff has adequately requested these documents in its discovery requests, though the Court barely reaches this conclusion. Although these documents are not explicitly requested, they are responsive to certain requests. In its Request for Production No. 1, Plaintiff asks Shamrock to produce documents relied upon in answering the interrogatories. With respect to audit logs, in its Interrogatory No. 10, Plaintiff asks Shamrock to state whether it utilized the EHR from July 31 2022 to March 1, 2025. The Court finds it reasonable that Shamrock would rely on audit logs to determine its response to this request. With respect to patient account detail reports, in its Interrogatory No. 11, Plaintiff asks Shamrock to state the number of patients entered into the EHR between July 31, 2022 and March 1, 2025. The Court finds it reasonable that

Shamrock would rely on patient account detail reports to determine its response to this request. Thus, the Court finds that the documents are responsive.

However, it is still not clear to the Court whether Plaintiff or Shamrock are able to access the EHR system at issue. Plaintiff does not clearly state that it is unable to access this system, though it implies that it cannot. However, Shamrock implies that Plaintiff does have access. As for Shamrock, in its responses to the interrogatories, it states that it used paper records rather than the EHR system, but this does not mean that it is unable to access the EHR system at issue. Accordingly, to the extent Shamrock does have access to the EHR system at issue, it must produce the requested documents. If Shamrock does not have access to the EHR system at issue, it must clearly state as much.

Nevertheless, the Court agrees with Shamrock that limitations are warranted. Accordingly, Shamrock need only produce: (1) audit logs that are related to the EHR system at issue, which it refers to in the discovery dispute statement as the "old EHR system," and not to the "new EHR system Evident installed at Shamrock pursuant to a contract involving hospitals, and (2) audit logs and patient account detail reports dated from July 31 2022 to March 1, 2025.

## 2. Shamrock's Production of Cash Receipts for the Hospital

Plaintiff argues that Shamrock should produce cash receipts for the hospital. It argues that it "requested documentation that reflects the reimbursements and/or payments made to the Hospital during the relevant time period" and that cash receipts are the best available evidence. It argues that it would have earned a percentage of Shamrock's cash receipts as a service fee, so it needs to have information about cash receipts to establish its lost revenue. In response, Shamrock argues that Plaintiff does not need information relating to cash receipts because any damages owed

8

to Plaintiff will be calculated based on an average monthly service fee for the previous six months, or for a time period before Shamrock acquired the hospital in July 2022.

The Court finds that the information and documents sought by Plaintiff are relevant to the claims and defenses at issue in this litigation. In the TruBridge Services Agreements, the parties agreed that "Customer agrees to pay TruBridge an amount equal to the prorated Service Fees that would have accrued for an affected Service during the remainder of the Service's then current term." (Docket No. 40-2 at ¶ 12.) Although this amount is "calculated based upon the average monthly Service Fees for the affected Service provided in the previous six months," the cash receipts from the time following the July 2022 acquisition may be relevant to Plaintiff's claims that Shamrock has not paid invoices for services that Plaintiff rendered after the acquisition. (Docket No. 40 at ¶ 41.) Shamrock has provided no argument about why the requested discovery is either not proportional to the needs of the case, or so marginally relevant that the presumption of broad disclosure is outweighed by the potential for undue burden or harm. *See Allgood*, 2020 WL 86455, *1; *O'Malley*, 311 F.R.D. at 463.

Accordingly, Shamrock must produce cash receipts that are responsive to Plaintiff's Interrogatories Nos. 13 and 18 and Requests for Production Nos. 1, 4, 11, and 12.

3.     **The Sufficiency of Plaintiff's Document Production**

Shamrock argues that Plaintiff has not produced documents that should be in its possession that relate to Plaintiff's contention that Shamrock "availed" itself of Plaintiff's "goods and services." (Docket No. 85 at 9 (quoting Docket No. 60 at 6).) These documents include: (1) "any of the documents that should exist if [Plaintiff] provided accounts receivable management services to Shamrock Community Hospital, Inc., such as records that its employees followed up on denied claims or made collection calls"; and (2) documents evidencing its claims that Shamrock benefitted

from use of the old EHR system. (Docket No. 85 at 10.) In response, Plaintiff states that it has produced numerous documents that it believes support its claim that Shamrock used its services, including unpaid invoices, situation reports, "BOOS Billing Reports," and a "financial dashboard."

Based on the parties' arguments, the Court is unable to determine that Plaintiff is withholding responsive documents that should be produced. Shamrock believes that Plaintiff should have additional responsive documents, but Shamrock is not able to clearly elucidate to the Court what those documents may be. The Court cannot find that Plaintiff has custody and control of responsive documents when the parties have not clearly defined what those documents are. For these reasons and based on the parties' arguments, the Court finds no error in Plaintiff's production.

## IV.    CONCLUSION

For these reasons, the parties' joint motion for discovery dispute conference (Docket No. 84) is **DENIED** and the parties' discovery dispute is resolved as set forth above.  Any party directed to provide or produce additional information must do so **within 21 days** of the date of entry of this Order.

To the extent that any party believes that an extension of the discovery deadline is warranted, that party may file a separate motion.

It is SO ORDERED.

_____
BARBARA D. HOLMES
United States Magistrate Judge

10